IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 05-226-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JULIE ELIZABETH SPURK, | ) | |
| | ) | |
| Defendant. | ) | |

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Stephen F. Peifer
    Assistant United States Attorney
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon 97204

        Attorneys for Plaintiff

    Lisa Hay
    Assistant Federal Public Defender
    101 S. W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Defendant

KING, Judge:

Defendant Julie Spurk is charged with four counts: one count of conspiracy to commit mail theft and three counts of mail theft. Spurk made statements to City of Hillsboro police officers. Spurk moves to suppress these statements on the grounds that they were taken in violation of her Fifth Amendment rights. In addition, evidence was seized from a blue backpack. Spurk moves to suppress this evidence, claiming a violation of her Fourth Amendment rights.

**FACTS**

The facts as adduced in an evidentiary hearing show that at 5:55 am on April 2, 2005, Hillsboro police received a call from a concerned civilian, Carlos Aguilar, reporting on-going theft from residential mailboxes. Aguilar watched the two suspects, a man and a woman, and gave detailed physical descriptions of them, their backpacks and their location.

Soon after receiving the report, Hillsboro police officer Robert Shook arrived at the scene, where he noticed that Aguilar was still observing the suspects from his car. Shook immediately spotted the two suspects, who closely matched the descriptions. The suspects were standing next to each other and were approximately five to eight feet from a bench that was located under a window, although Spurk may have been as much as thirteen feet from the bench. Johnson was standing closer to the bench and Spurk was standing closer to a tree in the yard. The suspects were talking with two residents of the house. On the bench or leaning against the bench were two backpacks like those Aguilar had seen the suspects carrying. A yellow bicycle reportedly used by the male suspect was lying nearby in the grass.

Shook parked his car behind a van that was in the driveway of the residence. Shook does not remember telling the suspects not to run, but one resident of the house remembers Shook

saying, "Don't run" immediately upon exiting his police car. Shook remembers being concerned Johnson might run because he knew he had a record. Shook approached the two suspects and told them that he had a report of two people stealing mail, and the descriptions matched the two of them. The resident recalls the officer behaving in a "mellow" way with the suspects, as if he just wanted to see what was going on, although he does remember Shook accusing them.

The male suspect, later identified as Daryl Ray Johnson (a co-defendant in the case), had several pieces of mail sticking out of his jacket. Shook told him to keep his hands out of his pockets as he appeared to have a chain or lanyard that Shook believed could be used as a weapon. Shook asked Johnson why he had the mail, and Johnson said he did not know. The officer told Johnson to put the mail on the bench next to the backpacks. Johnson said the gray backpack was his and the other one, blue with a flowered print, belonged to Spurk. After further conversation with Johnson, at 6:12 am, Shook arrested him, advised him of his *Miranda* rights and took him away from Spurk's side by placing him in the police car.

While Shook took Johnson to the police car, Hillsboro police officer Jeff Rose began questioning Spurk. At some point, Rose conducted a cursory pat-down of Spurk. She said Johnson was her boyfriend and that they had fought last night, but they had met again this morning at some nearby apartments. At first, Spurk said she did not know what Johnson had been doing or that he was taking mail. She denied stealing mail. Rose did not believe her, pointing out that an eye witness had seen her. At some point, she admitted there was mail in the backpack but that Johnson had taken it and put it in her backpack. Rose asked if one of the backpacks was hers, and she acknowledged possession of the blue flowered one. When Rose asked for her consent to search the backpack, Spurk declined. After additional questioning, she

Page 3 - OPINION AND ORDER

admitted to opening a mailbox but stated there was no mail inside. Finally, Rose asked her why she was stealing mail, and she said for living and drugs.

Rose took Spurk into custody at 6:30 am and advised her of her *Miranda* rights. Spurk cried and said she did not want to go to jail but just wanted a ticket. Shook took possession of the backpacks and inventoried the gray backpack's contents at the scene. As it was windy that day, Shook placed the gray backpack inside the flowered backpack and did not inventory the contents of the flowered backpack until the officers had returned to shelter. Spurk's purse was inside the blue-flowered backpack, but was not included in the list of the backpack's contents on the inventory sheet.

No weapons were drawn, no patrol lights were turned on, prior to their arrest neither suspect was placed in restraints, and there were no additional officers other than Shook and Rose.

## DISCUSSION

I.    <u>Whether Spurk was in Custody When She was Questioned</u>

Before an officer interrogates an individual, he must give *Miranda* warnings if the individual is in custody. <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (per curiam).

A defendant is in custody when "a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave." <u>United States v. Hayden</u>, 260 F.3d 1062, 1066 (9th Cir. 2001), <u>cert. denied</u>, 122 S. Ct. 1117 (2002). The determination is based on the totality of the circumstances. Factors to be considered in the analysis include, "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual."

Id. Interrogation is "either express questioning or its functional equivalent'" and includes statements or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985) (quotations omitted). An officer's subjective, but undisclosed, view about whether the person being interrogated is a suspect is irrelevant to the analysis of whether the person is in custody. Stansbury v. California, 511 U.S. 318, 319 (1994).

According to defendant, she was in custody from the time Johnson was arrested in front of her and Rose confronted her about her involvement. Once she admitted the backpack was hers, and stated that it had mail inside, the officers had probable cause to arrest her. However, they continued questioning her without giving her *Miranda* warnings. Applying the factors set forth above, defendant asserts that the first thing Shook said to her was "Don't run." Although Spurk and Johnson were outside, as opposed to the police station, the nature of the interrogation indicated Spurk was in custody. A marked police car blocked the van in the driveway so that a driver could not leave and Rose did not leave Spurk's side until she was arrested. The detention was not temporary or brief; Spurk was questioned for twenty minutes after Johnson was arrested, and the entire ordeal lasted more than thirty minutes. Spurk was never told she could leave, she was told not to run, and she began crying when she was placed into custody. Accordingly, defendant claims the statements she made after she admitted the backpack was hers ought to be suppressed.

The government responds that the circumstances are much closer to a "stop" rather than a formal arrest. The government argues Spurk was treated as if she were subject to routine questioning on the street, the location was not coercive, and there was little or no pressure

applied to detain her. The officers had evidence that something was wrong, and they were merely asking her questions. Neither officer drew his gun or handcuffed the suspects, and only subjected Spurk to a brief pat-down. Furthermore, they did not begin substantively questioning Spurk until after Johnson had been arrested, so the duration of the detention was not as lengthy as defendant asserts.

I find that Spurk was in custody after she admitted the backpack was hers and Rose continued to question her. The officers never asked Spurk if she minded talking to them and their questions went beyond threshold questions such as questions to ascertain her identity and purpose for being in the area. Instead, Rose never left Spurk's side and repeatedly confronted her with the information provided by the witness, questioning her for approximately twenty minutes. This was not a situation where Rose's single question or two elicited an incriminating statement from Spurk, nor is this a situation where Rose limited his questioning to her reasons for being in the area. The questioning was of the sort that would make Spurk feel that she was going to be held for a prolonged period of time. Furthermore, Spurk watched Shook arrest Johnson in front of her. A reasonable person would not have felt free to leave.

Because I find that Spurk was in custody once she admitted the backpack belonged to her and Rose continued questioning her, I need not resolve defendant's alternative argument that her statements were not voluntary. All statements Spurk made after she admitted the backpack was hers and that it contained mail are inadmissible.

II. <u>Whether the Search of Spurk's Backpack Violated her Fourth Amendment Rights</u>

The government bears the burden to demonstrate that a search or seizure without a warrant falls within a well-established exception to the warrant requirement. <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971).

The government asserts the search was proper under the exception for searches incident to arrest. During a search incident to arrest, the police officer may search the arrestee and the area "within [her] immediate control" meaning "the area from which [she] might gain possession of a weapon or destructible evidence." <u>United States v. Hudson</u>, 100 F.3d 1409, 1419 (9th Cir. 1996) (citation omitted). Factors to consider include the number of persons being arrested, the number of officers present, the officers' position with regard to the arrestee, whether officers displayed guns, and the distance between the arrestee and the place searched. <u>Id.</u>

Here, the government contends, Spurk was standing within a few feet of her backpack, and witness statements and her own statements confirmed that the backpack belonged to her. The search occurred shortly after her arrest.

Defendant argues that the officers indicated at the time of the search that they were performing an inventory search, not a search justified on other grounds. Defendant requests that the court reject the government's new post-hoc rationale. Defendant also argues that the backpack was not in her possession when the officers approached her, the backpack was some distance away, and the officers never saw defendant in control of the backpack. At five to eight feet away, the backpack was not within arms-length. In addition, if Spurk was standing closer to the tree than the bench, she was approximately thirteen feet away from the bench. Furthermore, the officers were clearly not concerned about Spurk's backpack containing a dangerous weapon

or destructible evidence since they directed Johnson to place the mail from his pocket on the bench next to the backpacks.

I reject the government's argument that the search of Spurk's backpack was incident to her arrest. The government offered no evidence that the officers were searching the area within Spurk's immediate control to ensure she did not gain possession of a dangerous weapon or destructible evidence. Spurk was standing from between five and eight feet from her backpack, and may have been as far as thirteen feet from the backpack. She never moved from that position until the officers placed her into custody. In fact, Shook directed Johnson closer to the backpacks when Shook asked him to place the mail from his pocket on the bench, indicating no concern on their part as to the contents of Spurk's backpack. There were two police officers, one for each defendant, and Rose never left Spurk's side. The government has not met its burden that the search incident to arrest exception to the warrant requirement applied here.

Alternatively, the government argues the search was a lawful inventory search. Inventory searches may be conducted so long as they comport with set criteria. South Dakota v. Opperman, 428 U.S. 364, 376 (1976). The Hillsboro Police Department's policy permits the opening of closed containers in the context of an inventory search in two circumstances:

A. When the closed container is an item designed for carrying money and/or small valuables. Examples include, but are not limited to, closed wallets, closed coin purses, closed purses and closed waist packs.

B. When the person in custody requests they keep the closed container with them while in the secure portion of a police vehicle or a secure police holding room.

The government contends the backpack qualifies under option A because Spurk's backpack is the functional equivalent of a purse. The government contends the backpack was approximately the size of a kid's backpack. It reports that the backpack contained valuables,

Page 8 - OPINION AND ORDER

such as the stolen tax refund checks and Spurk's purse.  In addition, a purse could be the size of a backpack, and more people carry backpacks than purses.

Defendant argues that the backpack is not small enough to be comparable to a coin purse, a wallet, or a waist back, and she made no request to keep the backpack with her in the police car.  In addition, when the officers left the scene, they stuffed Johnson's backpack inside Spurk's backpack, which also contained Spurk's purse, indicating that the size of Spurk's backpack precludes it from qualifying as "an item designed for carrying money and/or small valuables." Finally, the only items listed on the inventory sheet are the mail; although the search was allegedly pursuant to the inventory policy, the one valuable inside the backpack, Spurk's purse, is not listed there.  This, according to defendant, is evidence of the officers' pretextual use of the inventory search.

I reject the government's rationale for its search of the backpack under the inventory policy.  The Hillsboro Police Department's inventory policy permits the search of a closed container when it is "an item designed for carrying money and/or small valuables.  Examples include, but are not limited to, closed wallets, closed coin purses, closed purses and closed waist packs."  The list of items, while not intended to be complete, does not contemplate the inclusion of backpacks, a container that is not designed for carrying money and small valuables.  It is a container designed for carrying items larger than small valuables.  Indeed, in this case, Spurk's backpack could carry both her purse and Johnson's backpack at the same time.  An alternative ruling would render meaningless the language limiting the size of the container, permitting the Hillsboro Police Department to search briefcases, gym bags, or even suitcases, and impose no limits on the application of the inventory policy.

Page 9 - OPINION AND ORDER

Because I find that the government's proffered exceptions to the Fourth Amendment's requirement for a warrant are inapplicable, the evidence seized from Spurk's backpack is inadmissible.

## CONCLUSION

Defendant Julie Elizabeth Spurk's Motion to Suppress Statements and Evidence (#27) is granted.

IT IS SO ORDERED.

Dated this <u>    20th    </u> day of December, 2005.

<u>    /s/ Garr M. King              </u>
Garr M. King
United States District Judge